IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 20-cr-30074 |
| | ) | VIO: Title 18, United States Code, |
| OMAR HERNANDEZ-LOPEZ, | ) | § 1343 and § 1014. |
| | ) | |
| Defendant. | ) | |

## SUPERSEDING INDICTMENT

THE GRAND JURY CHARGES:

### BACKGROUND

At all times material herein:

1. El Tapatio De Jalisco Inc., was a company doing business as La Fiesta Grande, a Mexican restaurant located in Springfield, Illinois.

2. The defendant, the defendant's sister, and the defendant's brother were employed at La Fiesta Grande restaurant.

3. The Federal Housing Administration ("FHA") provided mortgage insurance on loans made by FHA-approved lenders that protected them against losses by paying the unpaid principal balance if a property owner defaulted on his or her mortgage.

4. loanDepot was a FHA-approved lender located in Foothill Ranch, California that funded residential mortgage loans, including FHA-approved federally related mortgage loans.

5. loanDepot used the Internet to conduct its mortgage lending business.

6. Zip Capital Group was a company located in Irvine, California that submitted loan packages on behalf of business owners for funding to lenders, such as National Funding, Inc.

7. Zip Capital Group received loan applications using the Internet.

8. National Funding, Inc. was a company located in San Diego, California that provided loans to business owners and obtained funding for loan packages originating from other companies, such as Zip Capital Group.

## COUNTS 1 AND 2
## (Wire Fraud)

### SCHEME TO DEFRAUD

9. From on or about June of 2018 until at least on or about June of 2019, in Springfield, Illinois and elsewhere, the defendant devised and intended to devise a scheme to defraud the FHA, loanDepot, Zip Capital Group, and National Funding, Inc, of money and property, which scheme is described in substance in the following paragraphs.

### MANNER AND MEANS OF THE SCHEME
### ($40,000 Loan Application on Behalf of La Fiesta Grande)

10. As a part of the scheme, in June of 2018, the defendant used the Internet to submit a loan application on behalf of La Fiesta Grande restaurant for $40,000 to Zip Capital Group that was later packaged and submitted for funding to National Funding, Inc.

11. As a further part of the scheme, on or about June 11, 2018, the defendant used the Internet to send Zip Capital Group a document entitled "Merchant Pre-Qualification Form." The document required the defendant to indicate the gross annual sales of La Fiesta Grande restaurant reported on its 2017 tax return. To make it appear that the restaurant had a greater

volume of business than was true, the defendant overstated the restaurant's gross annual sales. The defendant stated that the restaurant's gross annual sales was $600,000, when in truth and in fact, the gross annual sales reported on the restaurant's 2017 tax return was $256,932.

12. As a further part of the scheme, the Merchant Pre-Qualification Form required the defendant to indicate the amount of the restaurant's bank deposits for the past four months. To make it appear that the restaurant had a greater volume of bank deposits than was true, the defendant overstated the restaurant's bank deposits.

13. As a further part of the scheme, on or about July 3, 2018, to make it appear that the defendant was an owner of El Tapatio De Jalisco Inc., the defendant used the Internet to send Zip Capital Group a Schedule K-1 tax form for the tax year 2017 stating that the defendant was a shareholder of the company and owned 80% of its stock when in truth and in fact, the defendant was not a shareholder of El Tapatio De Jalisco Inc. in the tax year 2017.

*($35,000 Loan Application on Behalf of La Fiesta Grande)*

14. As a further part of the scheme, in December of 2018, the defendant, after the June 2018 loan application was denied by National Funding, Inc.,

used the Internet to submit a second loan application on behalf of La Fiesta Grande restaurant for $35,000 to Zip Capital Group that was later packaged and submitted for funding to National Funding, Inc.

15. As a further part of the scheme, on or about December 17, 2018, the defendant used the Internet to send Zip Capital Group a new Merchant Pre-Qualification Form. Again, the document required the defendant to indicate the gross annual sales of La Fiesta Grande restaurant reported on its 2017 tax return. To make it appear that the restaurant had a greater volume of business than was true, the defendant again overstated the restaurant's gross annual sales. However, this time the defendant stated that the restaurant's gross annual sales was $1,284,000, when in truth and in fact, the gross annual sales reported on the restaurant's 2017 tax return was $256,932.

16. As a further part of the scheme, on or about December 17, 2018, the defendant used the Internet to send Zip Capital Group three phony monthly PNC Bank account statements in the name of La Fiesta Grande restaurant with an ending date of September 31, 2018, October 31, 2018, and November 31, 2018. To make it appear that the restaurant had sufficient cash flow, the phony PNC Bank account statement, which

5

erroneously had an ending date of September 31, 2018, falsely stated an ending bank account balance of $5,716.89, when in truth and in fact, the bank account had an ending date of September 28, 2018 and a negative ending balance of $2,443.04. The phony PNC Bank account with an ending date of October 31, 2018 falsely stated an ending bank account balance of $3,135.84 when in truth and in fact, the bank account had a negative ending balance of $1,895.65. The phony PNC Bank account with an ending date of November 31, 2018 falsely stated an ending bank account balance of $131.90 when in truth and in fact, the bank account had a negative ending balance of $72.91. Additionally, the phony bank account statements falsely stated minimum overdraft and returned item fees, when in truth and in fact, the PNC Bank account had substantial overdraft and returned item fees for the periods shown on the phony PNC Bank account statements.

17. The loan application was denied by National Funding, Inc. on the basis of "Unconfirmed Documents."

*($265,010 Loan Application on Behalf of the Defendant's Sister)*

18. As a further part of the scheme, in November of 2018, the defendant used the Internet to begin the loan application process with loanDepot on

behalf of the defendant's sister for a FHA-approved loan of $265,010 to purchase a house in Glenarm, Illinois.

19. As a further part of the scheme, on or about November 28, 2018, the defendant used the Internet to send loanDepot two phony federal W-2 statements. To make it appear that the defendant's sister earned more wages and tips than was true, the phony federal W-2 statements falsely reported that the defendant's sister had earned wages and tips in the amount of $122,514.50 in 2016 and $146,116.50 in 2017, when in truth and in fact, the defendant's sister had reported earning wages and tips in the amount of $7,215 in 2016 and $6,117 in 2017 on her federal W-2 statements.

20. As a further part of the scheme, on or about December 8, 2018, December 11, 2018, and January 15, 2019 the defendant used the Internet to send loanDepot phony PNC Bank account statements. To make it appear that the defendant's sister had more money in her PNC Bank account than was true, an email sent on December 8, 2018 attached a phony PNC Bank account statement for the period ending October 3, 2018 that falsely stated an ending bank account balance of $61,801.91, when in truth and in fact, the bank account had a negative ending balance of $234.09 at the time. An email sent on December 11, 2018 attached a phony PNC Bank account

statement for the period ending November 5, 2018 that falsely stated an ending bank account balance of $68,234.60, when in truth and in fact, the bank account had an ending balance of $100.60 at the time. An email sent on or about January 15, 2019 attached a phony PNC Bank account statement for the period ending December 5, 2018 that falsely stated an ending bank account balance of $68,234.60, when in truth and in fact, the bank account had an ending balance of $210.28 at the time.

21. As a further part of the scheme, on or about January 14, 2019, the defendant used the Internet to send loanDepot two phony wage statements. To make it appear that the defendant's sister had earned more wages and tips than was true, the phony wage statements falsely reported that the defendant's sister had earned wages in the amount of $60,000 on December 6, 2018 and $70,000 on December 28, 2018, when in truth and in fact, the defendant's sister had reported earning wages and tips in the amount of $10,310 at La Fiesta Grande restaurant on her 2018 federal W-2 statement.

22. As a further part of the scheme, on or about January 30, 2019, the defendant used the Internet to send loanDepot a document entitled "Uniform Residential Loan Application" dated January 30, 2019. To make

it appear that the defendant's sister had more money in her PNC Bank account than was true, the Uniform Residential Loan Application falsely stated that defendant's sister had $68,234.60 in her PNC Bank account, when in truth and in fact, the defendant's sister had approximately $975.33 in the account at the time.

23. loanDepot denied the $265,010 loan application.

**($233,689 Loan Application on Behalf of the Defendant's Brother)**

24. As a further part of the scheme, in May and June of ~~2018~~ 2019 the defendant used the Internet to submit to loanDepot a loan application on behalf of the defendant's brother for a FHA-approved loan of $233,689 to purchase a house in Springfield, Illinois.

25. As a further part of the scheme, on or about May 21, 2019, the defendant used the Internet to submit to loanDepot a Uniform Residential Loan Application dated May 21, 2019. To make it appear that the defendant's brother had an account with a substantial asset, the Uniform Residential Loan Application falsely stated that the defendant's brother owned an account that had an asset with a cash or market value of $50,000, when in truth and in fact, the defendant's brother did not own an account that had an asset with a cash or market value of $50,000.

9

26. As a further part of the scheme, on or about May 21, 2019, the defendant used the Internet to send loanDepot two phony federal W-2 statements. loanDepot had requested copies of the defendant's brother's 2017 and 2018 federal W-2 statements. To make it appear that the defendant's brother had filed federal W-2 statements for the year 2017 and 2018 and had earned substantial wages and tips the defendant sent loanDepot phony 2017 and 2018 federal W-2 statements that falsely stated the defendant's brother had earned wages and tips in the amount of $122,514.50 in 2017 and $146,116.50 in 2018, when in truth and in fact, the defendant's brother had not filed federal W-2 statements for those years and had not earned the amount of income stated in the phony federal W-2 statements.

27. As a further part of the scheme, on or about May 21, 2019, the defendant used the Internet to send loanDepot a document entitled "Employee Pay Stub." To make it appear that the defendant's brother had earned substantial wages and tips, the Employee Pay Stub falsely stated that the defendant's brother had earned wages and tips in the amount of $75,733.63 as of May 3, 2019, when in truth and in fact, the defendant's

brother had not earned wages and tips in the amount of $75,733.63 as of May 3, 2019.

28. As a further part of the scheme, on or about June 10, 2019, the defendant used the Internet to send loanDepot a document entitled "Request for Verification of Employment." The document was signed by the defendant purportedly as the owner of La Fiesta Grande Restaurant. To make it appear that the defendant's brother had earned wages in the amounts of $122,514.50 in 2017, $146,116.50 in 2018, and $75,610 as of June 2019, the Verification of Employment falsely stated that the defendant's brother had earned wages in those amounts and further falsely stated that the defendant's brother's annual current gross pay was $147,000, when in truth and in fact, the defendant's brother had not earned wages in those amounts for those years and his annual current gross pay was not $147,000.

29. As a further part of the scheme, on or about June 10, 2019 and June 20, 2019, the defendant used the Internet to send loanDepot two phony federal income tax returns. loanDepot had requested copies of the defendant's brother's 2017 and 2018 federal income tax returns. To make it appear that the defendant's brother had filed a federal income tax return for the year 2017 and 2018 and earned substantial wages the defendant sent

loanDepot a phony 2017 and 2018 federal income tax return that falsely stated that the defendant's brother had earned wages and tips in the amount of $122,515 in 2017 and $146,117 in 2018, when in truth and in fact, the defendant's brother had not filed federal income tax returns for those years and had not earned the amount of income stated in the phony federal income tax returns.

30. As a further part of the scheme, on or about June 19, 2019, the defendant used the Internet to send loanDepot two phony PNC Bank account statements in the name of the defendant's brother for the period ending May 6, 2019 and June 6, 2019. To make it appear that the defendant's brother had a PNC Bank account holding a substantial amount of money, the phony bank account statements falsely listed the defendant's brother as the account holder and falsely stated an ending balance of $53,492.67 for the period ending May 6, 2019 and $50,386.52 for the period ending June 6, 2019, when in truth and in fact, the defendant's brother did not have a PNC Bank account at the time and the bank account number on the statement belonged to the defendant and the ending balance of the defendant's bank account was $3,492.67 on or about May 6, 2019 and $386.52 on or about June 6, 2019.

31. As a further part of the scheme, on or about June 26, 2019, the defendant used the Internet to send loanDepot a second Uniform Residential Loan Application dated June 28, 2019. To make it appear that the defendant's brother had an account with a substantial asset, the Uniform Residential Loan Application falsely stated that the defendant's brother owned an account with a designated account number that had an asset with a cash or market value of $51,386.52, when in truth and in fact, the defendant's brother did not own an account with the designated account number that had an asset with a cash or market value of $51,386.52, nor did the defendant's brother have a PNC Bank account at the time and the designated bank account number on the statement was the defendant's PNC Bank account number and the ending balance of the defendant's bank account was zero at the time.

32. As a further part of the scheme, on or about June 28, 2019, as a result of the false documents submitted by the defendant to loanDepot that disguised the defendant's brother's true financial condition, the defendant's brother obtained a $233,689 FHA-approved loan from loanDepot to purchase a house in Springfield, Illinois. The loan immediately went into default.

*Acts in Furtherance of the Scheme Include (but are not limited to) the Following:*

33. On or about June 11, 2018, the defendant used the Internet to send Zip Capital Group a Merchant Pre-Qualification Form which falsely stated that the gross annual sales of La Fiesta Grande restaurant reported on its previous year's tax return were $600,000.

34. On or about November 28, 2018, the defendant used the Internet to send loanDepot phony 2016 and 2017 federal W-2 statements which falsely stated the wages and tips earned by the defendant's sister.

35. On or about December 8, 2018, December 11, 2018, and January 15, 2019, the defendant used the Internet to send loanDepot phony PNC Bank account statements on behalf of the defendant's sister which falsely stated an ending account balance and overdraft and returned item fees.

36. On or about December 17, 2018, the defendant used the Internet to send Zip Capital Group a Merchant Pre-Qualification Form which falsely stated that the gross annual sales of La Fiesta Grande restaurant reported on its previous year's tax return was $1,284,000.

37. On or about December 17, 2018, the defendant used the Internet to send Zip Capital Group three phony PNC Bank account statements on

behalf of La Fiesta Grande restaurant which falsely stated ending account balances and overdraft and returned item fees.

38. On or about January 14, 2019, the defendant used the Internet to send loanDepot two phony wage statements on behalf of the defendant's sister which falsely stated the wages and tips she had earned on December 6, 2018 and December 28, 2018 at La Fiesta Grande restaurant.

39. On or about January 30, 2019, the defendant used the Internet to send loanDepot a Uniform Residential Loan Application which falsely stated that the defendant's sister had an asset in her PNC Bank account with a cash or market value of $68,234.60.

40. On or about May 21, 2019, the defendant used the Internet to send loanDepot a Uniform Residential Loan Application which falsely stated that the defendant's brother had an asset in his PNC Bank account with a cash or market value of $50,000.

41. On or about May 21, 2019, the defendant used the Internet to send loanDepot two phony 2017 and 2018 federal W-2 statements in the name of the defendant's brother.

42. On May 21, 2019, the defendant used the Internet to send loanDepot an Employee Pay Stub which falsely stated that the defendant's brother had earned wages and tips in the amount of $75,733.63.

43. On or about June 10, 2019, the defendant used the Internet to send loanDepot a Request for Verification of Employment which falsely stated that the defendant's brother had earned wages in the amounts of $122,514.50 in 2017, $146,116.50 in 2018, and $75,610 as of June 2019.

44. On or about June 10, 2019, the defendant used the Internet to send loanDepot two phony 2017 and 2018 federal income tax returns in the name of the defendant's brother.

45. On or about June 19, 2019, the defendant used the Internet to send loanDepot two phony PNC bank account statements in the name of the defendant's brother.

46. On or about June 20, 2019, the defendant sent loanDepot phony 2017 and 2018 federal income tax returns in the name of the defendant's brother.

47. On or about June 26, 2019, the defendant used the Internet to send loanDepot a second Uniform Residential Loan Application to loanDepot

which falsely stated that the defendant's brother had an asset in a bank account with a cash or market value of $50,386.52.

48. On or about each of the dates set forth below, in the city of Springfield, in the Central District of Illinois and elsewhere,

OMAR HERNANDEZ-LOPEZ,

the defendant herein, for the purpose of executing the scheme described above caused to be transmitted by means of wire communication in interstate commerce the signals and sounds described below for each count, each transmission constituting a separate count:

| COUNT | DATE | DESCRIPTION |
| --- | --- | --- |
| 1 | June 11, 2018 | False Merchant Pre-Qualification Form dated 6/11/2018 sent to Zip Capital Group using the Internet. |
| 2 | December 17, 2018 | False Merchant Pre-Qualification Form dated 12/17/2018 and false PNC Bank statements sent to Zip Capital Group using the Internet. |

All in violation of Title 18, United States Code, Section 1343.

## COUNTS 3 TO 11
### (False Statement)

49. The Grand Jury realleges and incorporates by reference paragraphs one through forty-seven of Counts 1 and 2 of the Superseding Indictment.

50. On or about each of the dates set forth below, in the city of Springfield, in the Central District of Illinois and elsewhere,

**OMAR HERNANDEZ-LOPEZ,**

the defendant herein, knowingly made a false statement for the purpose of influencing the action of loanDepot, a mortgage lending business and entity that made in whole or in part a federally related mortgage loans as defined in section 3 of the Real Estate Settlement Procedures Act of 1974, upon any application or loan, and the FHA, each statement constituting a separate count:

| COUNT | DATE | DESCRIPTION |
| --- | --- | --- |
| 3 | November 28, 2018 | Email attaching false 2016 and 2017 W-2 statements sent to loanDepot regarding the defendant's sister. |
| 4 | December 8, 2018 | Email attaching false PNC Bank statement ending October 3, 2018 sent to loanDepot regarding the defendant's sister. |
| 5 | January 30, 2019 | Internet portal sending false Uniform Residential Loan Application dated |

| | | |
|---|---|---|
| | | 1/30/2019 to loanDepot regarding the defendant's sister. |
| 6 | May 21, 2019 | Email attaching false 2017 and 2018 W-2 statements to loanDepot regarding the defendant's brother. |
| 7 | May 21, 2019 | Email attaching a false Employee Pay Stub regarding the defendant's brother. |
| 8 | June 10, 2019 | Email attaching false Request for Verification of Employment dated 6/10/2019 to loanDepot regarding the defendant's brother. |
| 9 | June 10, 2019 | Email attaching false 2017 and 2018 false income tax returns regarding the defendant's brother. |
| 10 | June 19, 2019 | Email attaching false PNC Bank statements ending May 6, 2019 and June 6, 2019 sent to loanDepot regarding the defendant's brother. |
| 11 | June 26, 2019 | Internet portal sending a false Uniform Residential Loan Application dated 6/28/2019 to loanDepot regarding the defendant's brother. |

All in violation of Title 18, United States Code, Section 1014.

A TRUE BILL,

s/ Foreperson

FOREPERSON

s/ Gregory M. Gilmore

_____ for

JOHN E. MILHISER
UNITED STATES ATTORNEY
GKH

19