IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 20-30074 |
| ) | |
| OMAR HERNANDEZ-LOPEZ, ) | |
| ) | |
| Defendant. ) | |

OPINION

RICHARD MILLS, United States District Judge:

The Government moves in limine to bar the Defense from introducing evidence that Defendant Omar Hernandez-Lopez may be subject to deportation proceedings in the event of conviction in this case and from disclosing the immigration status of a Government witness.

I.

In support of the motion, the Government states that Defendant and Government witness Carlos Tress are Mexican nationals. Neither individual has obtained the status of naturalized citizen. The Defense should be precluded from introducing evidence of the Defendant's and Mr. Tress's immigration status, on the basis that such information is irrelevant and inadmissible.

1

On February 3, 2021, a superseding indictment was filed alleging that Defendant committed violations of 18 U.S.C. §§ 1343, Wire Fraud and False Statements. The Defendant has pled not guilty to each charge.

The Government states that Defendant Omar Hernandez-Lopez, Johnny Hernandez-Lopez and Eduwigis Hernandez-Lopez are siblings. Omar and Eduwigis are the co-owners of El Tapatio De Jalisco, Inc., a company doing business as La Fiesta Grande. La Fiesta Grande is a Mexican restaurant located in Springfield, Illinois.

The Government states that the Zip Capital Group is a California company that provides online mortgage lending services. It received a "Merchant Prequalification Form" signed by Omar on December 17, 2018, on behalf of El Tapatio De Jalisco, Inc. It also received three months of PNC bank account statements for the business indicating positive ending balances. The Government alleges the PNC bank statements were false. Actual copies of the bank account statements obtained from the bank showed negative ending balances for the account each month. The loan application was closed without funding.

The Government states that loanDepot is a company located in Foothill Ranch, California that provides online mortgage lending services. Sometime prior to October 28, 2018, it received a $265,000 mortgage loan request in Eduwigis'

name. Omar's email account was used to submit most, if not all, of the loan documents to loanDepot. On October 28, 2018, Omar sent an email to loanDepot and attached two W-2s in Eduwigis's name—a 2016 W-2 showing $122,514 in wages and a 2017 W-2 showing $146,116 in wages. The Government alleges the 2017 W-2 obtained from a prior ex parte application for disclosure of tax returns confirmed the 2017 W-2 submitted to loanDepot was false.

The Government states that a Uniform Residential Loan Application was signed by Eduwigis and sent to loanDepot on January 30, 2019. LoanDepot also received two months of PNC bank account statements on Eduwigis's personal account. Both statements showed ending balances of over $60,000. However, the Government alleges both statements were false. Actual copies of the statements obtained from the PNC bank showed in one month the account was overdrawn and in the other month the ending balance was $100.60 and contained several overdraft charges. The loan application was closed without funding.

The Government states that on May 17, 2019, a mortgage loan request for $233,689 in Johnny's name was submitted to loanDepot. Omar's email account was used to submit most, if not all, of the documents to loanDepot. A Uniform Residential Loan Application ("Application") was completed and submitted to loanDepot between June 26, 2019, and June 28, 2019. The Application was signed by Johnny.

The Application stated that Johnny had a PNC bank account containing $50,386.52. On June 19, 2019, loanDepot received an email from Omar with an attachment of a PNC bank account statement for Johnny's personal bank account. The statement showed an ending balance of $50,386.52. The Government alleges the bank account statement was false. Records from PNC Bank indicate that Johnny did not have a bank account at the time with the bank. The PNC bank account documents submitted in support of the loan application with loanDepot in fact belonged to Omar. PNC Bank further stated that the May 2019 ending balance on Omar's account was actually $386.52, not $50,386.52. The loan application was funded and is currently in arrears.

The Government states that, to the best of its knowledge, the Defendant is not a naturalized citizen and would be subject to deportation upon conviction on the charged felony offenses.

The Government further states that, if called to testify at trial, Government witness Carlos Tress will testify that he was an employee of La Fiesta Grande Restaurant throughout some of the time the fraudulent documents were submitted. Mr. Tress would further testify about his knowledge regarding the creation of some of the fraudulent documents. Mr. Tress came to the United States on a travel Visa, which has since expired. Mr. Tress has not obtained any further permanent immigration status.

II.

Evidence is relevant if it has "some tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." United States v. Liporace, 133 F.3d 541, 544 (7th Cir. 1998) (internal quotation marks and citation omitted). Relevant evidence is generally admissible, except when it is otherwise excluded by law or rule. Fed. R. Evid. 402. Under Rule 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. When determining admissibility under Rule 403, courts use a "sliding scale approach: as the probative value increases, so does our tolerance of the risk of prejudice." Whitehead v. Bond, 680 F.3d 919, 930 (7th Cir. 2012).

The Government claims that the immigration status of the Defendant and Mr. Tress are irrelevant because that has no bearing on the proceedings. The Defendant is charged with several counts involving the dissemination of fraudulent documents in an effort to influence lenders to obtain loan funds. Immigration status has no relevance to the allegations. Moreover, the Government states it should not have to disclose the immigration status of its witnesses to a defendant unless the witness's immigration status was relevant to show bias or impeachment based on a promise

5

extended to that witness. The Government alleges no such promise has been made to Mr. Tress.

The Government alleges that, to the extent that the Court may find the Defendant or Mr. Tress's immigration status relevant, the extremely low probative value is outweighed by the danger of unfair prejudice. The introduction of the Defendant's and Mr. Tress's immigration status would cause unfair prejudice and could confuse the jury as to what issues are at stake and would thus waste time. The issue for the jury is whether the Defendant submitted false documentation to influence the granting of loans. The discussion of the immigration status of the Defendant, or of a witness like Mr. Tress, is neither material nor would provide insight to the jury as to whether the Defendant falsified documents as alleged.

The Government further alleges that this evidence should be excluded because it represents extrinsic evidence prohibited by Federal Rule of Evidence 608(b). Rule 608(b) prohibits the use of "extrinsic evidence to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." On cross-examination, a witness may be questioned about specific instances of conduct if such instances are probative of a witness's character for truthfulness or untruthfulness. *See* Fed. R. Evid. 608(b). The Government notes that Mr. Tress's immigration states has no bearing on whether or not he is truthful. There is no indication that Mr. Tress has not been truthful when speaking to the

Government or the Defense during preparation prior to trial. No evidence suggests that Mr. Tress has been untruthful in entering the country. Nothing about when Mr. Tress entered the United States or his time since entering the country indicate that he would be untruthful as a witness. The jury will be instructed to determine what weight to give Mr. Tress's testimony and make a determination as to Mr. Tress's truthfulness.

At the pretrial hearing on November 4, 2021, Counsel for the Defendant stated he has no intention of introducing evidence that Defendant could be subject to deportation proceedings as a consequence of conviction. Counsel also does not intend to disclose the immigration status of Mr. Tress. While the issue appears to be moot, the Court will grant the Government's motion in limine concerning immigration status.

Ergo, the Government's motion in limine concerning immigration status [d/e 35] is GRANTED.

The Parties are precluded from offering evidence on the immigration status of the Defendant and Government witness Carlos Tress.

ENTER: November 8, 2021     FOR THE COURT:

/s/ *Richard Mills*
Richard Mills
United States District Judge